UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RENNY JOSE MILLAN-PLAZA,

Petitioner,

v.

MARKWAYNE MULLIN, et al.,

Respondents.

CASE NO. 2:26-cv-02820-BAT

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING RELEASE**

Petitioner, a detainee of the Northwest Immigration and Customs Enforcement (ICE) Processing Center, requests the Court grant 28 U.S.C. § 2241 habeas relief and order Respondents to (1) immediately release him from detention, (2) declare his detention violates the Due Process Clause of the Fifth Amendment and applicable statutes and regulations; and (3) award attorney fees and costs. The Court **GRANTS** the petition for the reasons below.

## BACKGROUND

Petitioner is a 39-year-old Venezuelan national who presented himself at a United States port of entry on March 10, 2023. Dkt. 1 (petition) at ¶ 2. He appear at the port of entry after scheduled a screening appointment with Customs and Border Protection (CBP) officials via the "CBP One" mobile app. *Id.* Petitioner was paroled under Section 212(d)(5) of the Immigration and Nationality Act, which provides for the temporary release of noncitizens applying for

admission to the United States "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." Dkt. 1 at ¶ 2; 8 U.S.C. § 1182(d)(5)(A). Officials charged him as inadmissible under the INA and issued him a Notice to Appear. Dkt. 8 at 4.

After entering the United States, Petitioner applied for asylum on February 26, 2024. Dkt. 1 at ¶ 3. He attended two preliminary hearings in Portland, Oregon in February 2024 and March 2025. *Id.* at ¶ 4; Dkt. 11 (Petitioner's traverse) at 4. Petitioner has resided in Salem, Oregon, since his arrival. Dkt. 1 at ¶ 7. He represents he moved to a different address in Salem and updated his address with the immigration court, but "potentially" did not inform ICE of the change, and otherwise complied with the conditions of his parole. *Id.* at ¶ 4–5. Respondents contend Petitioner failed to report to ICE one year after release and failed to update his address, constituting a parole violation. Dkt. 8 at 4.

On July 6, 2026, ICE took Petitioner into custody. The arrest report, Form I-213, states officers encountered Petitioner in Lebanon, Oregon, "driving a vehicle that was registered to him." ICE agents approached Petitioner while he was parked in a Wal-Mart parking lot and placed him under arrest. Dkt. 10-2 at 3. Petitioner was processed and transferred to the Northwest ICE Processing Center, where he remains today.

## LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). The district courts' habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may seek habeas relief by showing that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638

(9th Cir. 2004).

**DISCUSSION**

Petitioner's sole claim is the violation of his Fifth Amendment right to procedural due process. The Court evaluates the claim under *Mathews v. Eldridge*, 424 U.S. 319 (1976), which the parties agree applies. *Mathews* established a three-factor balancing test to determine whether a governmental action comports with due process: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguard," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

**I. As a parolee, Petitioner enjoys a liberty interest notwithstanding 8 U.S.C. § 1225.**

Respecting the first *Mathews* factor, the parties agree Petitioner has a liberty interest. Dkt. 1 at 11; Dkt. 8 at 7. Due process "applies to all 'persons' within the United States, including [noncitizens], whether their presence here in lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Respondents contend the liberty interest is substantially diminished by Petitioner's mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Dkt. 8 at 5–7. The Court disagrees.

Petitioner's liberty interest flows in part from the three years he has spent in this country while released on humanitarian parole under 8 U.S.C. § 1182. Petitioner was paroled, and any revocation of that parole must comply with the Due Process Clause. The Supreme Court held as much in the criminal context, writing:

> The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The

> parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. . . . The parolee has relied on an least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.

*Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The Court concluded: "[T]he liberty [of a parolee] is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal." *Id.* In that case, the process required included a revocation hearing giving the parolee an opportunity to be heard. *Id.* at 487–88. Though the context is different, the liberty interest *Morrissey* established applies here. As in *Morrissey*, Petitioner was released based on an evaluation of his ability to function in society: The fact Petitioner was paroled means, under the applicable regulations, that DHS necessarily found he "present[ed] neither a security risk nor a risk of absconding." 8 C.F.R. 212.5(b). Petitioner, too, "has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." In fact, the logic of *Morrissey* arguably applies with greater force, as Petitioner is civilly detained and has not been charged with or convicted of a crime. Dkt. 1 at ¶ 5; *Torres v. Hermosillo*, No. 2:25-CV-02687-LK, 2026 WL 145715 (W.D. Wash. Jan. 20, 2026) (humanitarian parole "can establish the same kinds of liberty interests described in *Morrissey*").

The Court thus rejects Respondents' argument that § 1225 authorizes Petitioner's re-detention, as well as the contention § 1225 "substantially diminishes" his liberty interest. The Court agrees Petitioner, as a parolee, may be subject to mandatory detention under § 1225. *Osuna Benitez v. Hermosillo*, No. 2:25-CV-02535-BAT, 2025 WL 3763932, at *3 (W.D. Wash. Dec. 30, 2025) (quoting *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 139 (2020)). But, under the constitution, noncitizens like Petitioner are in a meaningfully different

position from § 1225 detainees who were never previously paroled. The question is not Respondents' statutory authority to detain Petitioner, but the process the Constitution requires to revoke Petitioner's parole. *See, e.g.*, *P.T. v. Hermosillo*, No. C25-2249-KKE, 2025 WL 3294988, at *2; *Hernandez v. Mullin*, No. 2:26-CV-00942-GMN-BNW, 2026 WL 1492868, at *3 (D. Nev. May 28, 2026) ("Several courts in the Ninth Circuit have concluded that when a noncitizen is paroled under § 1182, the government cannot summarily revoke that parole without offending due process.").

Petitioner entered the United States at a port of entry, timely filed an asylum application, has no arrests or convictions, and developed a life in this country over three years. His liberty may not be deprived without due process of law, as this Court has held many times in similar circumstances. *See, e.g.*, *Osuna Benitez v. Hermosillo*, No. 2:25-CV-02535-BAT, 2025 WL 3763932 (W.D. Wash. Dec. 30, 2025); *Torres v. Hermosillo*, No. 2:25-CV-02687-LK, 2026 WL 145715 (W.D. Wash. Jan. 20, 2026); *E-D-S-O- v. Hernandez*, No. 2:26-CV-00785-RAJ, 2026 WL 1067036 (W.D. Wash. Apr. 20, 2026).

**II. The risk of erroneous deprivation of liberty is high.**

Regarding the second *Mathews* factor, Respondents claim they detained Petitioner for a specific reason: he violated the terms of his parole when he (1) failed to report to ICE upon automatic expiration of the one-year period of his parole and (2) submitted an application for work authorization in 2025 listing a different Salem, Oregon address from the address ICE had on file. Dkt. 8 at 8.

As for the requirement to report to ICE after a year, Respondents do not provide the parole order. There is thus no factual basis showing Petitioner was ever informed of the requirement to report, or the consequences for failing to do so, or was given specific instructions

for how to report. For his part, Petitioner claims "many persons who were paroled in by use of CBP One were never given clear instructions about requirements to check-in with ICE-ERO" and that he "did not receive any mail, to the best of his knowledge, instructing him at any time to report to an ICE Field Office." Dkt. 1 at ¶ 5. The evidence Respondents submit regarding the alleged parole violation is limited to a single statement in Petitioner's arrest report: "Subject appeared to fail to report upon expiration of his parole. Also, in 2025, on his EAD application, he listed address: [redacted], SALEM, OR [redacted], which is different from the address ICE has on file." Dkt. 10-2 at 3. There is no indication of what records Respondents relied on for this assertion. There is no claim Petitioner missed a scheduled appointment with ICE; Petitioner claims he attended "all required hearings" and cites two in particular at which he was present. Dkt. 1 at ¶¶ 4, 7. As for the address discrepancy, Petitioner claims he moved within Salem once and informed the immigration court of the change but may not have separately informed ICE. Dkt. 1 at ¶ 5. Respondents identify a discrepancy between a 2025 work authorization application and the address on file with ICE, but do not state which address is incorrect. The apparent implication is Petitioner misrepresented his place of residence to the immigration authorities, but in context, the "violation" appears more likely a bureaucratic misstep.

Respondents also argue service upon Petitioner of the warrant and notice of custody determination when he was arrested supplied him with formal notice and a tailored custody determination. Dkt. 8 at 4. However, Respondents admit they cannot locate a copy of either document. *Id.* at n.2. Nor is anything showing how the documents were in fact served; no records are provided or cited to support the assertion in the declaration of ICE officer Kurtis Reed. *See id.*; Dkt. 9 at ¶ 6. In general, Petitioner's A-file is scant, containing only a Notice to Appear and the arrest report. *See* Dkt. 10.

In sum, the record regarding the alleged parole violations is both vague and incomplete. Respondents call Petitioner's conduct "clear, record-based noncompliance with the explicit conditions of a fixed-term parole." Dkt. 8 at 8. However, "record-based" is an assertion lacking supporting facts as no record is provided of the precise violations; "explicit conditions" are similarly in question because the parole order is not provided and there is no assertion or showing Petitioner knew of the conditions, whatever they were. In assessing the sufficiency of a particular administrative process, the degree of deprivation created by the decision is a factor. *Mathews*, 424 U.S. at 340. Balanced against the considerable deprivation of Petitioner's liberty—months in detention with no opportunity to be heard—there is insufficient indication of a process finding that an alleged address discrepancy and failure to report are reason enough to detain him.

The Court finds the risk of erroneous deprivation is high. Aside from these two violations, the record reflects no other reason Petitioner might be considered a danger or flight risk: he appeared at a port of entry after making a "CBP One" appointment; he has no criminal history; has lived in Salem, Oregon, for the duration of his residency in the United States; he has attended the hearings of which he was given notice; and he claims he updated his address with the immigration court when he moved. The fact Petitioner's arrest report incorrectly states he "failed to comply with the conditions of his release from custody upon OREC service," despite the absence of an OREC (order of release on recognizance), increases the risk the decision to revoke parole rested on insubstantial grounds. *See* Dkt. 10-2 at 3. And the elapsed time between the alleged 2024 and 2025 parole violations and the 2026 arrest, alongside the scant record, raise the risk as well. The Court thus finds this factor weighs in favor of Petitioner.

**III. The government's interest in detaining Petitioner without due process is minimal.**

Third, the Court considers the government's interest. Respondents correctly note that they have a strong interest in enforcing the immigration laws and ensuring noncitizens' appearance for removal proceedings. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022). However, the public interest in civil detention without an opportunity to be heard is not high on these facts, where Petitioner has no criminal history, entered the United States at a port of entry, timely filed an asylum application, and has appeared at required hearings and maintained residence in one place. Compared to Petitioner's liberty interest, Respondents' interest in re-detaining him without procedural safeguards is low. The third factor weighs in favor of Petitioner.

As all three *Mathews* factors favor Petitioner, Respondents violated Petitioner's due process rights when they detained him. The Court concludes an order of release is the appropriate remedy. Based upon the *Mathews* factors, Petitioner has a protected liberty interest in release from custody, and due process requires he be released on humanitarian parole just as he was originally released and permitted to enter the country.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS**:

1. The petition for writ of habeas corpus is **GRANTED**. Dkt. 1.

2. Respondents shall **RELEASE** Petitioner within 24 hours of entry of this order and file a status report certifying he has been released within 48 hours of entry of this order.

3. Petitioner may file a motion for an award of fees and expenses under the Equal Access to Justice Act within the time required by statute.

DATED this 14th day of September, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge